**STATE OF VERMONT**

**ENVIRONMENTAL COURT**

Vermont Environmental Board,
Plaintiff,                                          }
                                                         }
v.                                                     }    Docket No. 96-5-02 Vtec
                                                         }
Allen Road Land Company, Inc.,          }
and John Larkin, Respondents.

Decision and Order on Respondents= Motion

On April 23, 2002, the Chair of the Vermont Environmental Board (the Board) issued an administrative order pursuant to 10 V.S.A. ' 8008 regarding Respondents, who timely requested a hearing in Environmental Court. The Environmental Board is represented by Thomas G. Walsh, Esq. Respondents are represented by Carl H. Lisman, Esq. Respondents have moved to limit the issues to be heard at the hearing on the merits of the Administrative Order, now scheduled for July 2, 2002 (and to continue if necessary on July 3, 2002).

Respondents argue essentially that the violations stated in the Administrative Order do not constitute violations of the permit conditions of Land Use Permit #4C1060-EB issued by the Board or of Land Use Permit #4C1060 issued by the District Commission. The Board agrees that the merits hearing would > benefit= from a ruling in advance of the scheduled hearing defining the permitted hours of operation and which activities or operations are subject to the permitted hours, but argues that questions as to whether the alleged actions violated those hours of operations are disputed issues of fact.

Essentially, Respondents have posed and the Board has responded to a motion for the disposition of legal issues prior to the hearing. See V.R.C.P. 76(d)(3)(D). However, due to the nested sets of incorporations-by-reference found in the Land Use Permits, it may turn out to be necessary for the parties either to submit agreed facts or to submit more of the materials that were incorporated into the permits by reference, in order for the Court to rule on some of those legal issues.

The Land Use Permit issued by the Board defines the project as the subdivision of a 28.21 acre parcel (known as Parcel C) on Allen Road in South Burlington to create 32 single-family residential lots and one lot (Lot 36) with six residential duplex structures (also described as 12 multi-family units), to be served with municipal water and sewage facilities, plus three additional lots: Lot 35 to be retained by the Allen Road Land Company, Inc., Lot 33 proposed as open space, and Lot 34 for a city park. The project includes new roadways to be dedicated to the City of South Burlington and a stormwater system including three detention basins to be maintained by the homeowners= association. The Permittee is required by the Board= s decision to A complete, operate and maintain@ the project in accordance with the terms and conditions of both the Land Use Permit as issued by the District Commission and the Land Use Permit as issued by the Board, with the A plans and exhibits on file with@ the Board and with the conditions of the Board= s permit. In turn, the District Commission= s permit requires that the project be A completed, operated and maintained@ in accordance with the Commission= s Findings of Fact and Conclusions of Law, with the A plans and exhibits on file with@ the Commission, and with the conditions of the Commission= s permit. In the present proceeding, the Board has attached to its motion a number of exhibits submitted to the District Commission and to the Board; it is not possible to determine whether or which of the A plans and exhibits on file with@ the Commission or the Board are not provided in these the materials. It appears from the materials that the

applicant proposed itself to construct the multi-family structures (whether or not it intended thereafter to sell the units) but to sell the undeveloped subdivided lots to individual homeowners to construct single family homes with a footprint of 1,880 square feet. Nothing in the project description or the attachments suggests that the design or construction of the single-family houses were submitted for approval as part of the project application, as contrasted with the multi-family buildings. The architectural drawings by the architect for the multi-family buildings appear to have been attached as a supplement to the application (although not to the materials filed with this Court). (See reference to A Attachment D@ at p. 7 of the Board= s memorandum.)

In their argument, Respondents group the asserted violations into the categories of indoor work, outdoor work A requiring@ completion A after hours,@ and outdoor work beginning before 7:00 a.m., finishing after 5:00 p.m., or work on weekends A as required by the circumstances.@ To the extent that Respondents= arguments require any factual determination of whether the indoor work produced noise, or whether any of the outdoor work outside the > standard= hours of operation was made necessary by the circumstances of construction, those are disputed matters of fact that must await the evidentiary hearing. Further, although both parties are probably aware of whether any additional outdoor construction work remains to be done on the project (that is, whether there is any potential for continuing or additional violations), they have not provided this information to the Court.

The question of whether any of the work asserted to be a violation constituted a substantial or material change requiring a permit amendment is not only a disputed question of material fact, but is a question which would have to be posed at the administrative level before it could be ruled on by this Court. That is, the Board does not allege as a violation that Respondents failed to obtain a permit amendment for the work done outside the > standard hours of operation= ; therefore that issue is not before the Court in the present case.

The Court is able to resolve in this order only the following issue raised by the memoranda:

Whether the requirement that the project be constructed in accordance with the application established enforceable hours of 7 a.m. to 5 p.m., Monday through Friday, during construction, at least with respect to outdoor site work and construction on the retained lots, on the multi-family buildings, and on the infrastructure and roadway installation and associated construction and landscaping.

The permit requirement that the project be constructed in accordance with the application did impose on the Permittee enforceable hours of 7 a.m. to 5 p.m., Monday through Friday, during construction (at least for outdoor site work and construction on the three retained lots, on the multi-family buildings, and on the infrastructure and roadway installation and associated construction and landscaping), because those are the hours proposed by the applicant as the hours of operation during construction. We reach this conclusion without ruling on whether the Commission or the Board could have imposed construction hours solely for noise control purposes if those hours had not been offered by the applicant.

On the other hand, while several other issues raised or alluded to by the parties may be able to be resolved by legal rulings in advance of the hearing, the parties have not fully provided their arguments or associated documents in support of their positions on these arguments:

Whether indoor construction activities are limited by the construction hour limitations.

Whether construction on the single-family homes constructed by purchasers of the single-family home lots are limited by the construction hour limitations and, if so, whether the lot purchaser, the Permittee, or both, may be responsible under the permit for compliance with those limitations. (Compare the responsibility under an Act 250 permit for construction by the lot purchaser of a

home in excess of the square footage of coverage, or in excess of the number of bedrooms or number of toilets provided in the Act 250 permit, and whether that responsibility also remains jointly with the permittee-seller of the lot after the lot is sold.)

Whether the processing of any of Respondents= pending Act 250 applications should be stayed, which in turn depends on whether the violations asserted in the Administrative Order are directly related to the activity which is the subject of the other pending applications.

Because both parties appear to recognize that it may be helpful to resolve these additional issues regarding the scope of the permit conditions prior to the presentation of the evidence on the alleged violations, we will hold a telephone conference as soon as possible, to discuss the effect of this ruling on the hearing scheduled for July 2, 2002. It may be possible to submit these issues entirely on agreed facts, and to schedule a hearing at a later date on the question of whether a violation has occurred, and whether and how much of a penalty should be imposed. Indeed, it may be possible to submit on agreed facts the question of whether a violation has occurred, and only to hold the hearing on the question of a penalty. The conference to discuss these issues will be held later today, Monday, June 24, 2002 if it is possible for the parties to set up a telephone conference with Judge Wright at the Windsor Superior Court, or tomorrow when Judge Wright returns from a scheduled early morning site visit in White River Junction. Please call the Environmental Court at 479-4486 as soon as you receive this order, to make arrangements for the conference.

Done at Barre, Vermont, this 24th day of June, 2002.


_____
Merideth Wright
Environmental Judge